IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **Zoran Trlin,** | )<br>) |
| Appellant, | )<br>) |
| v. | ) No. 04 C 06239<br>) |
| **Allen Stefanek and**<br>**Elmina Reyes,** | )<br>)<br>) |
| Appellees. | ) |

## MEMORANDUM OPINION AND ORDER

Zoran Trlin ("Appellant") appeals from a default judgment of the Bankruptcy Court for the Northern District of Illinois holding his debt to Allen Stefanek and Elmina Reyes ("Appellees") to be nondischargeable and awarding Appellees a monetary judgment of $575,000.

In November, 2001 Appellees purchased a fifty percent interest in Appellant's company, Z Transport Inc. ("Z Transport"), for $500,000. Appellees later made additional investments bringing their total investment to $575,000. Within six months, Z Transport was no longer a viable business entity. On May 7, 2002, Appellees' counsel sent a letter to Appellant's counsel expressing their displeasure with the handling of Z Transport and alleging that a number of tortious acts had been committed by Appellant. Appellee Stefanek was forced to file a petition for bankruptcy and listed Appellant as an individual against whom he was asserting a claim.

Neither party disputes that Appellant received notice of Stefanek's bankruptcy proceeding.

On September 13, 2002, Appellant filed his own petition for bankruptcy in the Bankruptcy Court for the Northern District of Illinois ("Bankruptcy Court"). Appellant did not list Appellees on his schedule of creditors, however. The Bankruptcy Court initially scheduled a deadline of January 6, 2003 for all creditor filings contesting discharge under 11 U.S.C. §§ 523 and 727. The court later extended this deadline to February 28, 2003 on its own motion. Unaware of Appellant's bankruptcy proceeding, Appellees filed an action in the Los Angeles Superior Court, Southeast District, on July 30, 2003 alleging various tortious acts and contractual breaches regarding the handling of Z Transport.

On September 10, 2003, Appellant amended his bankruptcy schedule to add Appellees to his list of creditors. On September 15, 2003, Appellant's counsel orally advised Appellees' counsel of Appellant's ongoing bankruptcy proceeding. On October 22, 2003, the Los Angeles Court was given formal notice of the bankruptcy proceeding.

On January 14, 2004, Appellees filed a motion for an extension of time to file an adversary complaint against Appellant with the Bankruptcy Court. The motion argued that both constitutional due process and 11 U.S.C. § 523(a)(3)(B) guaranteed them the right to file an adversary complaint despite the February 28, 2003 deadline.

2

Appellees' Adversary Complaint at 4, 6. On May 20, 2004, the Bankruptcy Court granted Appellees' motion.

Appellees filed their adversary complaint on June 3, 2004. Appellees' Adversary Complaint alleged five counts under 11 U.S.C. §§ 523 and 727 contesting both the dischargeability of their individual debt and Appellant's discharge in bankruptcy. These counts were: 1) False Representations under§ 523(a)(2)(A); 2) Fraud by a Fiduciary under § 523(a)(4); 3) Fraud under § 727(a)(2); 4) Failure to Keep Records under § 727(a)(3); and 5) Failure to Explain Losses or Insolvency under § 727(a)(5). Appellant did not respond to the adversary complaint. As a result, Appellees filed a motion for default judgment. On September 1, 2004, with Appellant's counsel present, the Bankruptcy Court granted Appellees' motion for default judgment and entered an order declaring the debt nondischargeable, denying Appellant his discharge in bankruptcy, and granting Appellees monetary damages in the amount of $575,000.

In his appeal, Appellant makes three arguments to vacate the Bankruptcy Court's judgment. First, Appellant argues that the Bankruptcy Court erred in granting Appellees' motion for an extension to file their adversary complaint. Second, Appellant argues that the Bankruptcy Court's default judgment violates FED. R. CIV. P. 54A(c) because it grants relief that is different in manner than the relief requested by Appellees. Third, Appellant

3

argues that the Bankruptcy Court lacked jurisdiction to grant the monetary judgment under *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982). I only reach Appellant's first two arguments as they are dispositive. On appeal, I review the Bankruptcy Court's factual findings for clear error, and I review its conclusions of law de novo. *In Matter of Juzwiak*, 89 F.3d 424, 427 (7th Cir. 1996).

I. Motion for Extension of Time to File an Adversary Complaint

Appellant contends that the Bankruptcy Court erred in granting Appellees' motion for an extension of time to file an adversary complaint. The Bankruptcy Court allowed Appellees to file their motion on January 14, 2004, approximately four months after they received notice of Appellant's ongoing bankruptcy proceeding. The Bankruptcy Court granted the motion for extension because, under the circumstances of the case, it determined that the four month delay was reasonable. In finding the timeliness of Appellees' motion reasonable, the Bankruptcy Court primarily relied on its conclusion that Appellant intentionally omitted Appellees from his schedule of creditors.

Appellant attacks this decision on two grounds. First, Appellant argues that the motion was untimely because Appellees were required to file this motion within 60 days of receiving notice of the bankruptcy. Second, assuming this 60 day deadline

does not apply, Appellant argues that the Bankruptcy Court erred in granting Appellees motion under a general reasonableness standard.

Appellees' motion contested both the discharge of the individual debt owed to Appellees under § 523 and Appellant's overall discharge in Bankruptcy under § 727. These two matters are treated differently by the Bankruptcy Code and will be analyzed separately.

### i. Request for Extension to File § 523 Actions

Section 523 allows a creditor to file a complaint arguing that an individual debt should not be dischargeable in a debtor's bankruptcy. FED. R. BANKR. P. 4007(c) establishes that such "[a] complaint to determine the dischargeability of a debt [or a request for an extension to file such a complaint] under § 523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors." In the present case, this deadline was originally set for January 6, 2003 and then extended to February 28, 2003. Appellees, however, did not receive notice of the bankruptcy proceeding until more than six months after the deadline had passed. As a result, it was impossible for Appellees to comply with the deadline.

Appellant concedes an unscheduled creditor is entitled to file a complaint after the deadline, but argues that the court should read § 523 and FED. R. BANKR. P. 4007(c) as imposing a new 60 day filing deadline on the creditor from the time the creditor received

notice of the bankruptcy. Appellant cites cases that have contemplated this type of deadline when an unscheduled creditor brings a complaint after the deadline. *See e.g. In re Schwartz & Myers*, 64 B.R. 948, 953 (Bankr. S.D.N.Y. 1986) (proposing that the 60-day deadline begins when an unscheduled creditor receives actual notice of the bankruptcy).

Appellees respond that once the deadline has passed, § 523(a)(3)(B) operates to remove all time limitations from any later scheduled claims. In examining the statutory language, I find that the plain meaning of the Bankruptcy Code supports Appellees' contention and is controlling in this matter. *Lexington Ins. Co. v. Rugg & Knopp*, 165 F.3d 1087, 1091 (7th Cir. 1999).

An examination of the language of FED. R. BANKR. P. 4007, and §§ 523(c)(1), and 523(a)(3)(B) indicates that an unscheduled debt is not subject to the deadline suggested by Appellant. A step by step analysis of these sections is required. FED R. BANKR. P. 4007 allows a creditor to contest dischargeability at any time, unless the debt is controlled by § 523(c), in which case the Rule imposes the 60 day deadline. Section 523(c)(1) debts are those that fall under §§ 523(a)(2),(4),(6), or (15). Appellees § 523 claims of fraud and fiduciary breach are based on §§ 523(a)(2) and 523(a)(4). Therefore, they are normally controlled by § 523(c) and are normally subject to the 60 day deadline.

6

Section 523(c)(1), however, excepts from its definition any debt that falls under § 523(a)(3)(B). Section 523(a)(3)(B) debts are any 523(a)(2),(4), or (6) debts that were not scheduled in time to allow the creditor to make a "timely filing of a proof of claim and timely request for a determination of dischargeability . . . unless the creditor had notice or actual knowledge of the case in time for such timely filing and request." By removing § 523(a)(3)(B) debts from § 523(c), which is the only relevant provision with a filing deadline, the Bankruptcy Code dictates that § 523(a)(3)(B) debts are to be treated as the other non-§ 523(c) debts. These other debts are not subject to any filing deadlines and can be filed at any time. *See* Fed R. Bank. P. 4007(b). Both commentators and courts have reached this same conclusion.

> Occasionally, courts have permitted creditors additional time to file complaints raising dischargeability issues normally subject to the time limits when a debtor seeks to list such creditors in the schedule after the original deadline has expired. Such special permission is unnecessary. Any creditor added after the deadline has expired may file a complaint requesting the court to determine dischargeability under Code section 523(a)(3) on the grounds that the creditor did not have actual notice of the case in time to have its debt held nondischargeable under paragraphs (2), (4), or (6) of section 523(a). Under Rule 4007(b), such a complaint may be filed at any time and, if the creditor can prove that but for the lack of notice its claim would have been found nondischargeable, the court will find the claim nondischargeable under section 523(a)(3).

9 COLLIER ON BANKRUPTCY P. 4007.04 (15th ed. 1992) (footnotes omitted). In other words, "the penalty for failure to schedule such a debt . . . is the loss of the 60-day limitations period . . . ." 4 *Id.* P

7

523.09. Other bankruptcy courts have similarly agreed that an unscheduled debt removes the deadline and allows a creditor to file at any time. *See In re Bachman*, 296 B.R. 596, 599 (Bankr. Conn. 2003) ("[A] failure to schedule a creditor prior to the bar date means that such unscheduled creditor may assert that the subject debt is nondischargeable under 11 U.S.C. § 523(a)(3)(B). Section 523(a)(3)(B) nondischargeability is not subject to 11 U.S.C. § 523(c) and, accordingly, may be raised at any time."); *Fidelity Nat'l Title Ins. Co. v. Franklin (In re Franklin)*, 179 B.R. 913, 924 (Bankr. E.D. Cal. 1995) ("The penalty to the debtor for failing to schedule a fraud debt or otherwise to inform the creditor of the bankruptcy is forfeiture of the right to enjoy exclusive federal jurisdiction and loss of the sixty-day limitations period . . . ."). Nothing in the language of § 523(a)(3)(B) suggests that the creation of a new deadline would be proper or that a court should alter the deadline for an individual creditor. It has been observed that:

> [a]lthough not provided for by statute or rule, courts permitting an amendment sometimes set a new deadline for filing dischargeability actions under § 523(a)(2), (4), or (6). This practice is unnecessary and incorrect. Since the original deadline presumably was missed by the omitted creditor who was ignorant of the case, the action under § 523(a)(2), (4), or (6) can be filed "at any time" as an action under § 523(a)(3)(B). FED. R. BANKR. P. 4007(b). Moreover, the practice is error because the sixty-day deadline under Rule 4007(c) cannot be extended retroactively. FED. R. BANKR. P. 9006(b)(3).

Lauren A. Helbing & The Honorable Christopher M. Klein, *The Emerging Harmless Innocent Omission Defense To Nondischargeability Under Bankruptcy Code § 523(a)(3)(A): Making Sense Of The Confusion Over Reopening Cases And Amending Schedules To Add Omitted Debts*, 69 AM. BANKR. L.J. 33, 63 n.49 (1995).

In the present case, Appellant's failure to schedule Appellee's debt in his bankruptcy until after the filing deadline removed the debt from § 523(c)(1). Therefore, with respect to the § 523 actions, the Bankruptcy Court was correct in granting the motion for extension four months after Appellees received notice because there was no time limitation imposed on Appellees.

ii. Request for Extension to File § 727(a) Actions

Section 727(a) allows a creditor to file a complaint contesting the debtor's overall discharge in Bankruptcy. Timing of creditor objections to discharge under § 727(a) is governed by FED. R. BANKR. P. 4007(a) which states that "[i]n a chapter 7 liquidation case a complaint objecting to the debtor's discharge under § 727(a) of the Code shall be filed not later than 60 days following the first date set for the meeting of creditors under § 341(a)." There is no section in Chapter 7 comparable to § 523(a)(3)(B) that would operate to except an unscheduled creditor's complaint from the 60 day deadline.

A discharge, however, should only be available to those who have not abused the Bankruptcy process. *In Re Eliscu*, 85 B.R. 480,

482 (Bankr. N.D. Ill. 1988). The deadline imposed by Fed R. Bankr. P. 4007(a) is not jurisdictional and is subject to equitable defenses. *In re Kontrick*, 295 F.3d 724, 733 (7th Cir. 2002).

The Bankruptcy Court granted Appellees' motion for extension because it found that Appellant intentionally omitted Appellees' claim from his schedule and delayed the bankruptcy process. Appellant argues that these factual findings are incorrect. I review the Bankruptcy Court's findings of fact based on documentary evidence for clear error. Fed R. Bankr. P. 8013. As the Seventh Circuit has stated, "[t]o be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week-old, unrefrigerated dead fish." *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988).

The record shows that on May 7, 2002, Appellees' counsel sent a letter to Appellant's counsel alleging a series of legal tort claims against Appellant. The record also shows that Appellant received notice of Appellee Stefanek's bankruptcy which listed a claim against Appellant in its schedules. Furthermore, the record shows Appellant delayed in notifying the Los Angeles Superior Court of his ongoing bankruptcy proceeding in Illinois.

These facts are sufficient to support the Bankruptcy Court's findings that Appellant intentionally omitted Appellees' claim from his schedule and delayed the bankruptcy process. In particular,

the letter sent on May 7th gave notice to Appellant of Appellees' claims against him, even if the claims were disputed and not yet quantified. As a result, I find that the Bankruptcy Court did not abuse its discretion by granting an extension to Appellees to file their § 727(a) actions and I affirm that decision.

II. Did the Default Judgment Exceed Relief Requested?

Appellant next argues that the default judgment should be vacated because the judgment exceeded the Appellees' request for relief. FED. R. CIV. P. 54(c), as applied to the Bankruptcy Court through FED. R. BANKR. P. 7054, states: "[a] judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment." Default judgments that exceed the request for relief are to be vacated to the extent that they exceed the request for relief. *Compton v. Alton S.S. Co.*, 608 F.2d 96, 105-07 (4th Cir. 1979); *O'Brien v. Sage Group, Inc.*, 141 F.R.D. 81, 88 (N.D. Ill. 1992).

I agree with Appellant that in the present case, the entry of a monetary judgment for $575,000 provided different relief than was requested in Appellees' adversary complaint and their motion for default judgment. Appellee's Adversary Complaint alleged five counts for dischargeability: 1) False Representations Under § 523(a)(2)(A) that were "grounds to deny the dischargeability of the debt owned Plaintiffs"; 2) Fraud by a Fiduciary Under § 523(a)(4) that was "grounds to deny the dischargeability of the debt owed to

11

the Plaintiffs."; 3) Fraud Under § 727(a)(2) that was "grounds for discharge to be denied."; 4) Failure to Keep Records Under § 727(a)(3) that was "grounds for his discharge to be denied."; and 5) Failure to Explain Losses or Insolvency Under § 727(a)(5) that was "grounds to deny his discharge." The demand for judgment in Appellees' motion for default judgment requested the Bankruptcy Court to "enter a default judgment against [Appellant], pursuant to 11 U.S.C.S. §§ 523(a)(2)(A), and 523(a)(4) and Discharge Pursuant to 11 U.S.C.S. §§ 727(a)(2), 727(a)(3), and 727(a)(5) denying discharge of all debts, and for such other further relief as is just and proper." Appellee's Motion for Default Judgment at 3. Although the $575,000 debt is referenced in the adversary complaint, the Appellees' pleadings never request that the Bankruptcy Court adjudicate liability and damages associated with the debt or award them a monetary judgment. Therefore, the judgment has provided more than Appellees requested.

In arguing that the judgment should be upheld, Appellees cite a number of cases that hold that the Bankruptcy Court has jurisdiction to issue monetary judgments in dischargeability proceedings. *See e.g., In re Hallahan*, 936 F.2d 1496 (7th Cir. 1991); *In re Porges*, 44 F.3d 159, 164 (2d. Cir. 1995). I agree that the Bankruptcy court had jurisdiction to enter a monetary judgment if Appellees had requested that relief. Because Appellees never requested that relief, however, the Bankruptcy Court lacked

12

jurisdiction to determine the amount of the debt in a default judgment. Furthermore, the court does not agree with Appellees' assertion that their request for nondischargeability was impossible to separate from the adjudication of liability on the underlying debt. Appellees' Response at 10. These are two distinct and separable remedies. Courts can and do decide the issue of dischargeability of a contingent or unliquidated debt without fixing the amount of the debt or awarding a corresponding monetary judgment. *See e.g. Alliance Wholesalers, Inc. v. Nesbit (In re Nesbit)*, 2000 Bankr. LEXIS 250 (Bankr. D. Pa. 2000).

The purpose behind limiting relief in default judgments is to ensure that a party who relies on the pleadings to determine its maximum potential liability, and then chooses to default in order to limit its liability to that maximum, is not blindsided by the actual default judgment. *Compton*, 608 F.2d at 106 n.18. The discrepancy between the Appellees' requests for relief and the Bankruptcy Court's judgment in this case violates this principle. Based upon Appellees' pleadings, the Appellant could have expected that the maximum judgment would be that the debt in question would be judged nondischargeable and that he would be denied his discharge in bankruptcy. This judgment still would have left Appellant the opportunity to contest the extent of his liability on the debt in a later proceeding. The judgment of the Bankruptcy Court precluded this future determination by presenting Appellant

with a binding judgment determining the extent of his liability. The fact that Appellees added the language "for such other further relief as is just and proper" in their demand for default judgment also does not alter the outcome. This broad catch-all language cannot be said to provide notice to the Appellant that damages were being sought.

For these reasons, the $575,000 monetary judgment of the Bankruptcy Court is vacated. The judgment finding Appellees' debt nondischargeable under § 523 and denying Appellant's discharge under § 727(a) is affirmed. This case is remanded to the Bankruptcy Court for further proceedings.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

DATED: September 30, 2005